## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PATRICK NATHANIEL REED,

          Plaintiffs,

v.

SHANE RYAN, *et al.*,

          Defendants.

_____/

Case No. 3:22-cv-01181-TJC-PDB

### BLOOMBERG L.P.'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant, Bloomberg L.P. ("Bloomberg"), pursuant to Fed. Rule Civ. P. 12(b)(6), hereby moves to dismiss, with prejudice, the First Amended Complaint (D.E. 27) ("FAC") filed by Plaintiff, Patrick Nathaniel Reed ("Plaintiff" or "Mr. Reed"), for failure to state a claim against Bloomberg, as follows:

### Summary of Argument

In a desperate attempt to salvage some type of claim, against some media entity, after this Court indicated the weakness of Plaintiff's original claims, Plaintiff now drags yet another news organization, Bloomberg, into this misguided and conspiratorial lawsuit, for publishing an article that is not even about him. This Court should dismiss all claims pleaded against Bloomberg because Plaintiff has not and cannot satisfy the most basic elements of a defamation claim based on the Bloomberg article at issue (the "Article"). In short, the Article, its headline, and the sole statement in the Article

alleged to be defamatory, are simply *not about* Plaintiff, and no reasonable reader would conclude that they are.

The Article, the challenged headline (the "Headline") and sole challenged statement in the body of the Article (the "Statement"), are all about the larger, public, legal feud between LIV Golf ("LIV") and the PGA Tour, Inc. ("PGA"). Because the Headline and Statement at issue are not "of and concerning" Plaintiff – either explicitly or implicitly – he cannot satisfy this critical element of any defamation claim. Further, Bloomberg's incidental use of a photograph (the "Photo"), in which Plaintiff is not identified and is barely identifiable, to accompany the Article simply does not satisfy the key "of and concerning" element. This is particularly true here, since neither the Article, nor the caption to the Photo, name or reference Plaintiff at all. It is clear from the context that the Photo was chosen because it prominently features the "*LIV* Golf" logo, and nothing in the Article can reasonably be read to imply anything remotely defamatory about Plaintiff himself. Plaintiff's core allegation – that the Article and Photo somehow imply Plaintiff's personal involvement in LIV's legal strategy and tactics – is simply implausible and unsupported. As many courts have held, defamation claims are not properly based upon far-fetched conspiracy theories.

Further, Plaintiff cannot satisfy other fundamental elements of a defamation claim, including publication of a "false statement of fact." Aside from not being about Plaintiff, the Article's Headline is a nonactionable, privileged "fair report" of controversial positions taken in high-profile litigation between nonparties. Likewise, the sole challenged Statement is protected, nonactionable opinion – nothing more than the

2

author's characterization of legal developments and allegations as having taken a "sinister" turn. Finally, Plaintiff, a world-famous public figure, cannot plausibly satisfy the exacting actual malice standard. This Court should not hesitate to exercise its prominent role in preventing the press from being harassed and burdened by meritless defamation claims and should readily dismiss all claims against Bloomberg.

<u>**Claims Pleaded Against Bloomberg**</u>

Paragraphs 113 through 122 of the FAC are the only factual allegations pleaded against Bloomberg. (D.E. 27, ¶¶ 113-122.)  Although the Counts of the FAC against Bloomberg do not expressly incorporate any factual allegations, presumably ¶¶ 113-122 are the factual allegations alleged to support all four Counts against Bloomberg: Count 33 ("defamation"); Count 34 ("defamation by implication"); Count 35 ("defamation per se"); and Count 36 ("tortious interference").

In the body of the FAC, and in the Counts against Bloomberg, Plaintiff recites only two lines of text (appearing in boldface type) alleged to be defamatory. The first is the Article's Headline:  "**Saudi-Backed LIV Golf Is Using PGA Suit to Get Data on 9/11 Families, Court Told**". The second, the Statement, appears in the body of the Article:  "**It's now taken a more sinister turn.**"[1] In addition, the FAC alleges that the publication of a photograph that accompanies the Article (the "Photo") (*see* **Exh. "A"**)

---

[1]The FAC recites this sentence from the Article not as it appears verbatim in the Article itself, but rather as follows, inserting an explanatory parenthetical: "**It's (meaning the issue of 9/11 family victims) has taken a more sinister turn.**" *E.g.*, D.E. 27 at 29, ¶ 118. Plaintiff's parenthetical arguably mischaracterizes what "it" refers to; but regardless, because not even Plaintiff asserts that "it" refers to Plaintiff himself, the distinction is irrelevant for purposes of this Motion, as set forth below.

somehow creates a "false and misleading implication" about Plaintiff and "links him" to the alleged defamatory statements in the Article. *See* D.E. 27 at ¶¶ 114, 117, 367, 375, 378, 386, 391.[2]

## <u>The Article</u>

The Article at issue, published January 4, 2023, is titled "Saudi-Backed LIV Golf is Using PGA Suit to Get Data on 9/11 Families, Court Told." *Id.*, ¶ 113 n.8 (copy of the Article annexed hereto as **Exh. "A"** for Court's convenience). As is evident from the body of the Article itself, its thrust is reporting upon recent developments in the course of highly-publicized legal and public relations disputes between two rival professional golf organizations, LIV and PGA. *Id*. The Article recounts certain hard-hitting allegations made in the course of a litigation discovery dispute between LIV, PGA and PGA's public relations firm, Clout Public Affairs ("Clout"). The Article quotes and summarizes some allegations made in the underlying litigation concerning LIV and its discovery tactics. The last sentence of the Article cites to the case number for the federal court litigation involving the discovery dispute. The Article is not about the Plaintiff, Mr. Reed, in any way, shape or form; it does not name him anywhere in the Article; it does not quote him; it does not include a single sentence making any reference to Mr. Reed explicitly or implicitly. Notably, the Article *does* explicitly identify two other prominent LIV golfers, Phil Mickelson and Cameron Smith, but makes no mention whatsoever of Mr. Reed. *See* **Exh. "A."**

---

[2]The FAC also pleads claims for defamation per se and tortious interference all arising from the publication of the Article, as addressed *infra.*

## The Headline

The Headline of the Article reads:  "Saudi-Backed LIV Golf Is Using PGA Suit to Get Data on 9/11 Families, Court Told[.]" Thus, the Headline simply summarizes a position, publicly taken in a court filing, by a nonparty (Clout), which questions the motivations of another nonparty (LIV) in pursuing discovery in that proceeding.

Further, the Article's sub-headlines, in bullet point form below the Headline, summarize in neutral fashion the competing positions taken in the litigation. The first sub-headline, "PGA's PR firm says Saudis seek documents on unrelated clients," simply elaborates on the key point in the Headline. *See* **Exh. "A**." The second sub-headline, "LIV argues PGA used PR firm to coordinate 9/11 group protests," specifically addresses LIV's counter-argument and counter-accusations reflecting its position in response to PGA's and Clout's accusation. *Id.* Nothing in the Headline or sub-headlines refers, directly or indirectly, to Plaintiff.

## The Statement

The Statement appears as the second sentence and paragraph in the Article, as follows:

> Saudi Arabia-financed LIV Golf and its feud with PGA Tour, Inc. has divided fans, tested players' allegiances and sparked legal battles.
>
> **It's now taken a more sinister turn.**
>
> LIV, backed by the $676 billion Saudi sovereign wealth fund, was accused on Tuesday of using its US lawsuit against PGA to "build an intelligence file" on families of 9/11 victims who have been critical of the kingdom and its new professional

5

> golf circuit. The upstart has countered that the PGA is secretly running a "smear campaign" to take it down.

*See* **Exh. "A"** (emphasis added).  Read in context, it is clear that the pronoun "it" in the Statement refers to the feud between LIV and PGA, which the author characterizes as having taken a "sinister turn," as explained in the following two sentences, which summarize controversial positions taken by the parties in their "US lawsuit." *Id.* Nothing in the Statement refers, directly or indirectly, to Plaintiff.

### The Photo

The only reference whatsoever to Plaintiff in connection with the Article is the use of the Photo to accompany the Article's online publication, appearing at the top of the Article. *See* **Exh. "A."**  The Photo depicts Plaintiff, his face turned down and darkened by the shade of his cap. The cap prominently bears the stylized *LIV* **GOLF** logo on the front of the cap. Plaintiff's lanyard, bearing the *LIV* **GOLF** logo, is also visible in the Photo. Plaintiff's name does not appear in the Photo and the Photo has no caption, only a photo credit appears below it. *Id.* Plaintiff is not looking at the camera, and indeed his eyes are not even visible in the Photo, only the shadow-darkened lower half of his face; Mr. Reed is hardly recognizable to the average reader. *Id.* Aside from the photo credit, the only text appearing anywhere in or under the Photo at all is in the stylized logo *LIV* **GOLF**.

Indeed, the only reasonable conclusion to be drawn is that this particular Photo's selection had little or nothing to do with Plaintiff, but rather was chosen to accompany this Article because of the prominence of the stylized logo for the entity

that is the primary subject and focus of the Article – LIV Golf.   Nonetheless, Plaintiff's claims all hinge upon the publication of the Photo. The crux of all claims against Bloomberg is that the juxtaposition of the Photo with the Headline and the Statement – and nothing more – creates the false and defamatory implication that Mr. Reed is somehow *personally* involved in the LIV/PGA litigation. *See* D.E. 27 at ¶¶ 114, 117, 367, 375, 378, 386, 391.  As set forth below, this alleged implication is simply not plausible and the FAC should be dismissed as to Bloomberg.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 556.; *Iqbal*, 556 U.S. at 678.

Further, whether a challenged statement is defamatory is a question of law for the court. *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020); *Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018). Importantly, defamation claims against journalists implicate important First Amendment and press freedom concerns,

rendering early disposition especially appropriate. *See, e.g., Michel v. NYP Holding, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997). This principle is particularly applicable on this record, where a public figure plaintiff appears intent upon a course of aggressive litigation tactics to mute any unflattering media commentary related to him, or in the case of Bloomberg's Article, which makes no reference to him, the league for which he plays.

<u>**ARGUMENT**</u>

**I.   The FAC Fails to State a Claim for Defamation Against Bloomberg**

**A.   Elements of Defamation**

To state a Florida defamation claim, a Plaintiff must allege facts plausibly establishing: (a) a false and defamatory statement of fact, (b) "of and concerning" Plaintiff, (c) an unprivileged publication to a third party, (d) fault on the publisher's part, and (e) damages proximately caused by the libel. *See, e.g., Michel*, 816 F.3d at 695; *Parekh*, 820 F. App'x at 833 ("[A] defamatory statement must be 'of and concerning' the plaintiff to be actionable.") (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997); *Hay v. Ind. Newspapers, Inc.*, 450 So. 2d 293, 294 (Fla. 2d DCA 1984) (libel claim requires a defamatory statement "of and concerning" the plaintiff)).[3] Further, public figure plaintiffs such as Mr. Reed must

---

[3]The elements of a defamation claim under New York law are essentially the same. "In New York, a plaintiff must establish five elements to recover in libel: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability. On closer inspection, the first element of these five is actually composed of multiple parts: there must be (A) a writing, it must be (B) defamatory, it must be (C)

satisfy the high burden of pleading actual malice. *Michel*, 816 F.3d at 702 (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964)).

## B.   Elements of Defamation By Implication

Florida courts have held that defamation by implication is a "sub-species" of defamation. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106, 08 (Fla. 2008). The elements of defamation by implication are: (a) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (b) the creation of a defamatory implication by omitting facts. *See id.* at 1106 (defamation by implication claim necessarily based on statements alleged to be *true* but creating a defamatory implication).[4] Notably, defamation of a public figure by implication also requires proof of actual malice because it "is subsumed within the tort of defamation ... [so] all of the protections of defamation law ... [are] extended to the tort of defamation by implication." *Id.* at 1108.

---

factual—that is, not opinion—and it must be (D) about the plaintiff, not just a general statement." *Chau v. Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)).

[4]Many courts do not rigidly analyze each of these elements in defamation by implication claims where the court deems, solely from its review of the challenged publication, taken in context as a whole, that it fails to plausibly give rise to the implication plaintiff claims is false or misleading. In upholding dismissal of a defamation by implication claim, the Eleventh Circuit has held, "[w]here the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'" *Rubin v. U.S. News & World Rep. Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *see also Parekh*, 820 F. App'x at 834-35 (affirming district court's refusal to allow further amendment to allege defamation by implication on futility grounds). In short, once the court determines the alleged "false implication" is not plausibly supported in the body of the Article, it generally need look no further.

Here, although the FAC purports to plead separate counts against Bloomberg for both "defamation" (Count 33) and "defamation by implication" (Count 34), as set forth below, it is clear that the crux of both claims is the supposed implication arising from Bloomberg's use of the Photo. That is, it is plain that Plaintiff does not challenge the truth or falsity of the Headline or the Statement to the extent they report on the conduct of *nonparties* (PGA, LIV, Clout).  Rather, Plaintiff's claims are all premised upon the supposed implications he contends arise from the use of the Photo with the Article, *i.e.*, that Mr. Reed himself is somehow personally involved in the nonparties' litigation tactics that are the subject of the Article. *See* D.E. 27 at ¶¶ 114, 117, 367, 375, 378, 386, 391. Here it is evident from the face of the Article itself that the FAC has not and cannot plausibly satisfy the elements of his claims against Bloomberg for either defamation or defamation by implication.

### 1.    The Article Contains No False Statement of Fact

The "*sine qua non*" of any defamation claim is the publication of a *false* statement of *fact*. *Hallmark Builders, Inc. v. Gaylord Broad., Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (quoting *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)). The challenged statements must be shown to be demonstrably false as a factual matter, *i.e.*, capable of being proven true or false, rather than a matter of protected opinion. *Id.*; *Rasmussen v. Collier Cty. Pub. Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) ("Commentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel."). Significantly, whether "a statement is one of fact or one of opinion is a

10

question of law" for the Court to decide at the outset. *Rasmussen*, 946 So. 2d at 571. Generally, a "statement of fact" is one capable of being proven objectively true or false, as opposed to a subjective characterization, interpretation or conclusion drawn from stated facts. *Turner*, 879 F.3d at 1262-63. Here, the FAC's allegations as to *which* of the challenged statements are factually false, or *how* they could be deemed false, are not entirely clear; regardless, Plaintiff cannot plausibly allege that the Article, Headline, Statement or Photo comprise "false" statements of "fact," either directly or by implication.

*First*, as for the Headline ("Saudi-Backed LIV Golf Is Using PGA Suit to Get Data on 9/11 Families, Court Told"), the FAC does not allege the Headline itself is factually false, but rather, that the publication of the Photo in connection with the Article's Headline "create[s] the false and misleading implication that Mr. Reed is somehow involved in using the PGA lawsuit to get data on 9/11 families." D.E. 27, ¶ 114; *see also id.*, ¶ 115-16. Because Plaintiff fails to plausibly allege the falsity of the Headline, any defamation claim based solely on the Headline fails.

*Second*, the Statement at issue, nothing more than a characterization of developments in the LIV/PGA litigation as having taken a "sinister turn," plainly constitutes protected and nonactionable opinion, rather than a demonstrably false statement of fact.[5] Indeed, the Statement merely describes, in somewhat dramatic

---

[5] *See, e.g., Zorc v. Jordan*, 765 So. 2d 768, 772 (Fla. 4th DCA 2000) (where author simply took information from a proceeding and rendered an opinion on what occurred such statement held not defamatory); *Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336–37 (Fla. 3d DCA 1996) (reporter's characterization held pure opinion, basis of which

fashion, certain controversial positions taken in the course of litigation between two nonparties, PGA and LIV. Plaintiff presumably does not dispute those accusations were made in the litigation, and obviously could not prove nor disprove that such accusations were "sinister" or somehow "not sinister," a telltale sign of opinion.[6] The sentiment expressed in the Statement (aside from plainly being an expression of opinion), is clearly a reasonable and fair assessment of the accusations slung by LIV, PGA and Clout in their heated litigation, based upon facts disclosed in the Article. Indeed, accusing a litigant of utilizing discovery as a pretext to obtain personal information about victims of a tragedy could fairly be characterized as a "sinister" turn of events. Accordingly, Plaintiff's defamation claim based solely upon the Statement fails to plausibly allege a false statement of fact.

*Third*, as discussed more fully below, Plaintiff's claims related to the Photo are limited to defamation by implication claims based on its publication in conjunction with the Headline and the Statement. These claims must also be dismissed, since from the face of the Article as a whole it is clear no reasonable reader could fairly draw the implication Plaintiff alleges, *i.e.*, that Plaintiff was personally involved in the legal tactics characterized as "sinister." Plaintiff is not identified anywhere in the Article, and nothing in the Article could reasonably be read to suggest that Plaintiff

---

was disclosed in broadcast); *Skupin v. Hemisphere Media Group*, 2019 WL 11553350, at *3, *4 (Fla. 11th Cir. Ct. Jul. 10, 2019) (dismissing defamation claim on opinion grounds).

[6]*Michel*, 816 F.3d at 697 (noting that statements of fact are "readily capable of being proven true or false"); *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 360 (7th Cir. 2019) ("The inability to prove the statement false demonstrates that it is a statement of opinion, beyond the reach of defamation law.").

himself (one of many LIV golfers) was somehow *personally* involved in litigation positions or tactics taken by LIV or its counsel. Plaintiff is merely one athlete who plays for LIV, but is not even mentioned in the Article, although two other LIV golfers are. *See* Exh. **"A"** (Phil Mickelson, Cameron Smith noted as examples of LIV golfers). Many courts have dismissed similar defamation by implication claims based on such far-fetched, implausible associations alleged to arise from the incidental use of a photo.[7]

### 2.   The Article Is Not "Of and Concerning" Plaintiff and the Photo Creates No Implication Otherwise

Another fundamental requirement of a defamation claim is that the challenged statements are actually about the plaintiff himself — *i.e.,* "of and concerning" the plaintiff, rather than a nonparty. *See, e.g., Sloan v. Shatner*, 2018 U.S. Dist. LEXIS 138485, at *14-*15 (M.D. Fla. June 22, 2018) (dismissing defamation claim since statement not "of and concerning" plaintiff); *Thomas*, 699 So. 2d at 805. Indeed, the reference to plaintiff must be more than a mere "identifier" for a statement to be "of and concerning" plaintiff. *Jones v. Cmty. Newspapers, Inc.*, 2006 U.S. Dist. LEXIS 61211, at *9 (M.D. Fla. Aug. 29, 2006). Florida courts have long held that if a plaintiff is not named in the publication at issue, "the communication as a whole

---

[7] *See, e.g., Rubin.*, 271 F.3d at 1308 n.10 (photograph carried no defamatory implication when the photo was used to put a face to the quote and nothing else in article could be read to defame plaintiff); *Parekh*, 820 F. App'x at 835 (photos could not form basis of defamation by implication claim when, viewed in context, photo did not have false and defamatory implication); *Jones v. Detroit News*, 2022 Mich. App. LEXIS 4698, at *12-*13 (Mich. Ct. App. Aug. 11, 2022) (dismissing defamation by implication claim, article and associated images did not present defamatory implication that plaintiff was a criminal).

[must] contain[] sufficient facts or references from which [plaintiff] may be determined by the persons receiving the communication.'" *Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973)). The relevant inquiry is whether an average person, upon reading the statements, could reasonably conclude the plaintiff was implicated. *Isaac*, 557 F. Supp. 3d at 1259.

Here, as discussed above, the challenged statements concern nonparties LIV, PGA and Clout, not Plaintiff. Indeed, Plaintiff is never mentioned in the Article, and nothing in the Article can be read to implicate Plaintiff in any way. Moreover, the Photo reflects a shadow over Plaintiff's downturned face, largely concealed by the brim of his hat. It is thus apparent from the context of the Article as a whole that the focal point of the Photo is the **LIV Golf** name/brand/logo, rather than Plaintiff. Indeed, there is no caption under or surrounding the Photo, or any other descriptive information that identifies Plaintiff as the individual in the Photo. Simply put, there is nothing "of and concerning" Plaintiff in the challenged Statement, Headline or the Article, nor does the innocuous use of a stock Photo of Plaintiff, concealed by shadows and a hat, implicate Plaintiff to such a degree that the Statements or Article can reasonably be read to be "of and concerning" Plaintiff.[8]

---

[8] *See, e.g., Rubin*, 271 F.3d at 1308 n.10 (use of photograph accompanied by quotes from plaintiff did not create defamatory implication because "common practice of magazines to show photographs of those they quote merely for visual interest[;] inclusion of the quote beneath the caption indicates why [plaintiff's] photograph was included: to put a face to the quote[;] nothing else in the article can reasonably be read to falsely defame [plaintiff]"); *Hartman v. Meredith Corp.*, 638 F. Supp. 1015, 1017 (D. Kan. 1986) (dismissing defamation

*Parekh* is particularly instructive. There, as here, the article at issue focused primarily on a nonparty (plaintiff's ex-girlfriend), and her alleged conduct (a GoFundMe scam). 820 F. App'x at 830-32. There, as here, plaintiff's claims were based on the publication of his photo in conjunction with an article about someone else. *Id*. at 835. Mr. Parekh's libel by implication claim was based on the theory "that including pictures of them together created a false, defamatory implication that he was still affiliated with [the ex-girlfriend]." *Id*. The Eleventh Circuit, upon review of the article's context as a whole, in conjunction with the photo and statements at issue, rejected the "false implication" alleged as simply implausible. *Id*. In *Parekh*, as here, plaintiff's asserted implications were unreasonable, speculative and implausible on the face of the article itself. Thus, the court affirmed the dismissal of all defamation claims and the refusal to allow amendment to assert any defamation by

claim where use of plaintiffs' photo "in the absence of any mention of plaintiffs' names linking them with illegal activity, does not constitute defamation as a matter of law"); *Fogel v. Forbes, Inc.*, 500 F. Supp. 1081, 1085 (E.D. Pa. 1980) (photo and article not capable of conveying defamatory meaning asserted by plaintiffs who were not mentioned or identified in article, and photo was "incidental and [did] not imply that they [were] participating in the activity discussed in the article"); *Houseman v. Publicaciones Paso Del Norte*, 242 S.W.3d 518, 526 (Tex. App. 2007) (reasonable reader would not be misled by plaintiff's photo accompanying article, which did not otherwise implicate plaintiff); *Whidden v. Jackson Cty.*, 2017 U.S. Dist. LEXIS 207394, at *5-*6 (N.D. Fla. Oct. 30, 2017) (posting county jail booking photo not a "false statement" because not false to imply plaintiff remained detained or would be detained in future); *Montague v. NYP Holdings, Inc.*, 862 N.Y.S.2d 809, 809 (N.Y. Sup. Ct. 2008) (incidental use of plaintiff' photo, pictured with third party subject of profile, held not defamatory nor "of and concerning" plaintiff, since article focused on third party without referencing or identifying plaintiff); *In re Cable News Network and Time Magazine "Operation Tailwind" Litigation*, 2006 WL 2711744, at *4 (N.D. Cal. Sept. 21, 2006) (applying Florida and Texas law, broadcast and article not "of and concerning" plaintiffs, but rather impersonal criticism of government, focused on government officials' conduct, not plaintiffs', plaintiffs not named, quoted, or discussed, merely shown in accompanying photos).

implication claims. Notably, the *Parekh* court found the article at issue was not "of and concerning" plaintiff, that the publication of his photo with the article did not alter that conclusion, *and* that the use of plaintiff's photo did not plausibly support a defamation by implication claim. *Id.* at 83-35. Indeed, here the grounds for dismissal are stronger since, unlike in *Parekh*, Bloomberg's Article makes no mention of or reference to Plaintiff whatsoever, rendering the "false implication" alleged, based solely on a photo, even more implausible. *Id.* at 835.

Similarly, the Eleventh Circuit in *Rubin* upheld the dismissal with prejudice of plaintiff's libel by implication claims based on the use of plaintiff's photo. 271 F.3d at 1307-09. The *Rubin* court readily rejected all of the supposed false or misleading implications plaintiff claimed arose from the article's truthful statements about the gold refining industry, based solely upon the court's reading of the article in context. *Id.* at 1308. "Where the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'" *Id.* at 1306 (quoting *Byrd*, 433 So. 2d at 595). Notably, the *Rubin* court specifically rejected plaintiff's allegation that the use of his photo, in conjunction with the non-defamatory statements in the article about plaintiff's industry generally, created any defamatory implication about him personally. *Id.* at 1308 n. 10 (plaintiff's photo was included merely for "visual interest" and "to put a face to the quote" and thus "carries no defamatory implication"). Here, the grounds for dismissal are even stronger, since unlike in

*Rubin*, Bloomberg never named, quoted or made reference to Mr. Reed anywhere in the Article, the Photo, a caption or elsewhere.

In sum, no ordinary or reasonable reader could plausibly conclude that the Article somehow implies Mr. Reed himself was personally involved in the LIV/PGA litigation tactics that are the focus of the Article. Thus, Plaintiff cannot plausibly show that the Article contains any false statements, or any false implications, "of and concerning" him, and his defamation and defamation by implication claims against Bloomberg must be dismissed.

### C.    Plaintiff Cannot Plausibly Allege Actual Malice

Even if Plaintiff could satisfy the basic elements of his defamation claims, those claims fail nonetheless because, as a public figure, Plaintiff has not and cannot plausibly plead facts that would satisfy the demanding actual malice standard applicable to each of his defamation claims. Plaintiff admits he is a professional athlete of world renown.[9] As a world famous, professional athlete, Mr. Reed is undoubtedly a public figure. *See, e.g.*, *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1083 (3d Cir. 1985) ("sports figures are generally considered public figures"); *Scholz v. RDV Sports*, 710 So. 2d 618, 626 (Fla. 5th DCA 1998).[10]

---

[9] D.E. 27, ¶¶ 19-20 ("Mr. Reed is a professional golfer….."; "[Reed is] a top player in the world [with] exceptional world class golfing achievements …..").

[10] It appears Plaintiff concedes the actual malice standard applies at least to his defamation claims pleaded against the other Defendants. *See* D.E. 42, at 19-22 (arguing actual malice standard without disputing application); D.E. 43, at 18 (same).

Accordingly, Plaintiff's claims must be dismissed absent plausible facts to demonstrate Bloomberg published the Article "with knowledge that it was false or with reckless disregard of whether it was false or not." *Michel*, 816 F.3d at 702 (quoting *Sullivan*, 376 U.S. at 280). "The standard for actual malice therefore is a rather daunting one for public-figure plaintiffs . . . [because] public figures suing for defamation and defamation by implication are required to prove, by clear and convincing evidence, that the statements at issue were published with actual malice." *Klayman v. City Pages*, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), aff'd, 650 F. App'x 744 (11th Cir. 2016).

Further, as applied to defamation by implication claims, Plaintiff must not only plausibly plead Bloomberg's state of mind with respect to knowledge or reckless disregard for falsity of the allegedly defamatory statements, but also that Bloomberg specifically intended or endorsed the alleged false implication upon publication of the challenged statements.[11] Accordingly, Mr. Reed would have to plead facts

---

[11]*Jacoby v. CNN, Inc.*, 2021 U.S. App. LEXIS 36594, at *7-*8, *12 (11th Cir. Dec. 10, 2021) (quoting *Rapp*, 997 So. 2d at 1108) (all protections of defamation law afforded to media defendants extend to defamation by implication claims, failure to plead actual malice dispenses with defamation by implication claim, actual malice standard demands allegations of more than a mere failure to investigate, must show defendant purposefully avoided further investigation with intent to avoid the truth); *Heekin v. CBS Broad. Inc.*, 789 So. 2d 355, 359 (Fla. 2d DCA 2001) (must show defendant acted with knowledge of the false light or implication as to plaintiff); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237 n.2 (Fla. 3d DCA 2021) (noting *Heekin* a "classic example" of defamation by implication although nominally a false light claim, as Florida Supreme Court noted same analysis applies); *Project Veritas v. CNN, Inc.*, 591 F. Supp. 3d 1322, 1330 (N.D. Ga. 2022) (applying New York law to defamation by implication, requires that the challenged statements affirmatively and contextually suggest author "either intended or endorsed the inference"); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 255 (S.D.N.Y. 2014) ("especially rigorous showing" that author "intends or endorses" the false implication required).

showing Bloomberg specifically intended the Article to create the false implication that he was somehow personally and directly involved in LIV's litigation strategy and tactics in the PGA suit. As noted, because it is plain from the face of the Article itself that any such implication is utterly implausible, if not absurd, Plaintiff's claims must be dismissed for that reason alone. But further, the allegations of the FAC come nowhere near making the required showing that Bloomberg somehow *intended* to create such an implication in the first place. Indeed, at best, the FAC includes a sole, conclusory allegation that Bloomberg failed to diligently investigate all facts that would rebut the far-fetched implication that no reasonable reader would even draw.[12] As many courts have noted, the actual malice standard demands much more than an allegation of a mere failure to investigate.[13] Plaintiff's defamation and defamation by implication claims thus fall far short of satisfying the demanding actual malice standard and must be dismissed.

Further, as noted above, the Article, its Headline, the sub-headlines, and the solitary Statement at issue are not factually false (either explicitly or by implication), are *not even about* Plaintiff, and present the competing perspectives of nonparties LIV, PGA and Clout in a neutral manner. Indeed, the last sentence of the Article cites to

---

[12] D.E. 27 at ¶ 378 (alleging Bloomberg's journalism lacked "minimal due diligence" because it could have checked the court's docket in the LIV/PGA case to see Mr. Reed "is not a Plaintiff" or otherwise involved, but willfully disregarded this and used his picture to create the implication that he is somehow involved).

[13] *See, e.g., Michel*, 816 F.3d at 703 (actual malice requires more than alleged "departure from reasonable journalistic standards" and "failure to investigate, standing on its own, does not indicate the presence of actual malice").

the federal court case number for the litigation at issue. *See* **Exh. "A."** All of these factors further undermine any claim of actual malice. *See, e.g., Michel*, 816 F.3d at 703 (where publisher gives reader sufficient information to weigh article's veracity, it reduces risk of unfair or incorrect conclusions or implications, weighing against actual malice showing); *Klayman v. City Pages*, 2015 WL 1546173, at *16 (same); *Lam v. Univision Communs., Inc.*, 329 So. 3d 190, 198 (Fla. 3d DCA 2021).

Additionally, as detailed above, the Headline is privileged and nonactionable as a fair report of judicial proceeding between LIV, PGA and Clout, which further demonstrates the absence of any malice. *See, e.g., Jamason v. Palm Beach Newspapers, Inc.*, 450 So. 2d 1130, 1133 (Fla. 4th DCA 1984) (no actual malice arising from accurate report of a judicial proceeding). Likewise, the body of the Article addresses the accusations and counter-arguments of LIV, PGA and Clout, as well as noting that LIV's counsel was asked to comment for the story. The sub-headlines (the purpose of which is plainly to summarize and signal to the reader the key focus of the Article), reference three *nonparties* to this action (LIV, PGA and Clout), and make no reference to Plaintiff. The sub-headlines thus further belie Plaintiff's claims that the Article, or the juxtaposition of the Photo, creates or was intended to create any "false implication" about Plaintiff's supposed personal involvement in that litigation. Where, as here, the incidental use of the Photo, viewed in the context of the publication as a whole, does not plausibly support the "false implication" alleged – that the Plaintiff *himself* is the subject or focus of the publication – Plaintiff cannot

show "knowledge of falsity" or "reckless disregard for the truth." Stated differently, where, as here, the "false implication" alleged is simply not plausible on its face, there can be no knowledge of, or reckless disregard for, alleged "falsity." *See, e.g.*, *Michel*, 816 F.3d at 703; *Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1241 n. 32 (11th Cir. 1999) (existence of conflicting evidence supports finding of absence of actual malice).[14]

In short, because Plaintiff has not plausibly alleged the falsity of any statement in the Article, or any implication about Plaintiff arising from it, it follows he cannot show Bloomberg published the Article with "knowledge of falsity" or "reckless disregard" for the truth or with the specific intent to create any false implication. Plaintiff's claims against Bloomberg must be dismissed for this reason alone.[15]

## II.   Plaintiff's Remaining Claims Must Be Dismissed

Plaintiff's "defamation per se" claim against Bloomberg fails for the same reasons his defamation and defamation by implication claims fail, as set forth above. *See, e.g., Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (dismissing defamation and defamation per se claims for failure to plausibly plead

---

[14]Further, to the extent Plaintiff might attempt to confuse the constitutional "actual malice" standard applicable here with Florida "express malice," the Article's neutral presentation of competing and conflicting viewpoints belie any claim of bias or ill-will toward anyone, much less Plaintiff, and weigh heavily against any finding of any form of malice. *Nodar v. Galbreath*, 462 So. 2d 803, 810-11 (Fla. 1984); *Demby v. English*, 667 So. 2d 350, 353-54 (Fla. 1st DCA 1995); *John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So. 2d 178, 180 (Fla. 2d DCA 1991); *Boehm v. Am. Bankers Ins. Grp.*, 557 So. 2d 91, 94 (Fla. 3d DCA 1990). Here, because the purpose of the Article was to report on a controversial, high-profile court case between nonparties, and does not name or refer to Mr. Reed, by no plausible stretch of the imagination could the Article as a whole be deemed to be motivated by express malice toward Mr. Reed.

actual malice). Further, to the extent Plaintiff seeks a *presumption* of damages under pursuant to the defamation per se claim, such a presumption is impermissible under Florida law against a media defendant such as Bloomberg. *See, e.g., id.; Edelstein v. WFTV, Inc.*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001). Finally, Plaintiff's "tortious interference" claims are an impermissible attempt to circumvent defamation defenses and violate Florida's "single action" or "single publication" rule. *See, e.g., Callaway Land & Cattle Co. v. Banyan Lakes C. Corp.*, 831 So. 2d 204, 207-08 (Fla. 4th DCA 2002); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1257 (S.D. Fla. 2014).

## CONCLUSION

For the foregoing reasons, Bloomberg respectfully requests this Court to dismiss Plaintiff's First Amended Complaint, with prejudice, and grant such other relief the Court deems appropriate.

## Local Rule 3.01(g) Certification

I hereby certify I have conferred with Plaintiff's counsel by email on April 17-18, 2023, and represent that Plaintiff opposes the relief sought herein.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 19, 2023, a true and correct copy of the foregoing was served via CM/ECF on all counsel for record.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

<u>*s/ Gregory W. Herbert*</u>
Gregory W. Herbert
Florida Bar No. 0111510
Savannah Young
Florida Bar No. 1031408
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
herbertg@gtlaw.com
youngsa@gtlaw.com
*Attorneys for Defendant, Bloomberg L.P.*

**Exhibit A:  The Article**